TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JAMES A. SANTIAGO (Cal. Bar No. 300459)
Assistant United States Attorney
General Crimes Section
1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2229
     Facsimile: (213) 894-0141
     E-mail:    james.santiago@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:21-cr-00207-DMG |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT PATRICK MICHAEL O'REILLY'S APPLICATION FOR REVIEW/RECONSIDERATION OF DETENTION ORDER |
| v. | |
| PATRICK MICHAEL O'REILLY, aka "Patrick Reilly," | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney James A. Santiago, hereby files its Opposition to the application of defendant Patrick Michael O'Reilly for review/reconsideration of the detention order previously entered against him in this matter. (Dkt. 6, 36.)

The government's Opposition is based on the Memorandum of Points and Authorities contained herein, the files and records in this case,

//

//

and any additional evidence or argument that the Court may wish to consider at the hearing on this matter.

Dated: October 22, 2021               Respectfully submitted,

                                      TRACY L. WILKISON
                                      Acting United States Attorney

                                      SCOTT M. GARRINGER
                                      Assistant United States Attorney
                                      Chief, Criminal Division


                                            /s/
                                      JAMES A. SANTIAGO
                                      Assistant United States Attorney

                                      Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant is charged in a seven-count indictment with (1) false impersonation of a federal officer; (2) multiple counts of possessing fraudulent seals of departments and agencies of the United States; (3) being a person previously adjudicated as a mental defective and committed to a mental institution in possession of 19 firearms; and (4) attempted witness tampering.  After a detention hearing, this Court ordered defendant detained pending trial because of his risk of non-appearance and danger to the community.  He is now before the court seeking reconsideration of detention.

As set forth below, because defendant continues to be a flight risk due to the nature of the allegations and danger to the community (both physical and economic), his request for pre-trial release should be denied.

**II.   FACTUAL AND PROCEDURAL HISTORY**

As detailed in the Complaint, beginning in at least September 2019, defendant operated a fraudulent investment scheme in which he solicited millions of dollars from investors and used the proceeds to pay for personal expenses.  (Dkt. 1 at ¶ 6.)  As part of that scheme, defendant represented that he worked for federal law enforcement agencies, including the Department of Homeland Security ("DHS") and Federal Protective Service ("FPS"), and that he had ties to the Navy SEALs.  (Id.)  One investor, victim-witness P.S., invested approximately $1.5 million in companies defendant controlled.  (Id. at ¶7.)

On September 9, 2020, federal agents executed search warrants at defendant's residence and seized a fraudulent law enforcement badge

for the DHS, 19 firearms (including assault-style weapons and large capacity magazines), batons, body armor/ballistic vest carriers, and law-enforcement style vehicles that had official use only FPS Security Guard Information Manuals inside them.  (Id. at ¶¶ 8, 26-32.)  Agents also found records and official correspondence from the California Department of Justice and the FBI indicating that defendant was prohibited from possessing firearms.  (Id. at ¶ 31.)  After that correspondence, defendant's father used defendant's credit card to purchase 16 of the firearms found in defendant's house.  (Id. at ¶ 32.)

On February 12, 2021 defendant spoke with victim-witness P.S. regarding the search of his house.  (Id. at ¶¶ 10, 34-36.)  He then made additional attempts to contact P.S. via text messages, to which P.S. replied, "Please don't contact me anymore."  (Id. at ¶¶ 11, 37.)  Then on April 7, 2021, defendant drove a police-style Ford Explorer to P.S.'s residence and vandalized P.S.'s vehicle by removing a signal enhancing antenna.  (Id. at ¶¶ 11, 38.)  P.S. has informed law enforcement that he fears for his safety. (Id. at ¶ 11.)

On April 8, 2021, defendant was arrested after he disobeyed Beverly Hills Police Department traffic control officers.  (Id. at ¶¶ 40-41.).  He falsely informed the officers that he was a "Federal Agent."[1]  (Id. at ¶ 41.)  The officers recognized that defendant was the same individual who had vandalized P.S.'s vehicle the previous day.  (Id.)  In a Mirandized interview, defendant said P.S. was an "enemy" and a "scumbag."  (Id. at ¶ 44.)  The next day, defendant

---

[1] Defendant has falsely claimed to be a law enforcement officer on multiple occasions.  (Id. at ¶¶ 19, 25, 44.)

called P.S.'s father's investment company and said he did not want to "embarrass the family or [P.S.'s father]." (Id. at ¶ 47.)

On April 19, 2021, defendant made his initial appearance on the Complaint. Following a detention hearing, this Court ordered defendant detained pending trial, finding that no conditions of bond could reasonably assure defendant's appearance at future proceedings or the safety of the community, citing in particular defendant's criminal history, the allegations in the Complaint, defendant's refusal to interview with Pretrial Services, the lack of bail resources, and the reasons set forth in the PTS Report. (Dkt. 6.)

On April 30, 2021, the grand jury returned a seven-count indictment charging defendant with: false impersonation of a federal officer, in violation of 18 U.S.C. § 912 (count one); possession and furnishing of fraudulent seals of departments or agencies of the United States, in violation of 18 U.S.C. § 506(a)(3) (counts two, three, four, six); possession of firearms by a prohibited person, in violation of 18 U.S.C. § 922(g)(4) (count five); and attempted witness tampering, in violation of 18 U.S.C. § 1512(b)(3) (count seven). (Dkt. 11.)

On October 19, 2021 the parties submitted on Dr. Saul Faerstein's report which found defendant competent to stand trial. (Dkt. 37.)

Defendant has two permanent restraining orders issued by the California court, Case Nos. 21STRO00816 and 21STRO00817. (Dkt. 1 at ¶ 48.) The restraining orders relate to an alleged assault of defendant's Maintenance Director and Property Manager, that involved him punching and kicking the Maintenance Director. (Id.)

3

**III. LEGAL STANDARD**

Pretrial detention of a defendant without bail is appropriate where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. 18 U.S.C. § 3142(e); United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985). "[T]he government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk, and by clear and convincing evidence that the defendant poses a danger to the community." United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991) (citing Motamedi, 767 F.2d at 1406–07).

The court considers four factors in determining whether the pretrial detention standard is met: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics, including family and community ties and past criminal conduct; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); United States v. Winsor, 785 F.2d 755, 757 (9th Cir. 1986).

**IV. ARGUMENT**

This Court should deny defendant's application and defendant should continue to be detained pending trial because each relevant factor strongly weighs in favor of detention:

    **A. Defendant Is Charged With Serious Crimes, Including Being A Prohibited Person Possessing 19 Firearms And Attempted Witness Tampering**

4

As alleged in the charging documents, defendant obtained money from investors by representing that he was a federal law enforcement officer.  Defendant did not just say he was an officer, he took substantial steps to impersonate an officer.  He possessed a fraudulent DHS badge, law enforcement style vehicles, and tactical gear.  In fact, not only was defendant not a law enforcement officer, he was legally prohibited from possessing firearms due to his prior commitment to a mental institution.  After real law enforcement officers discovered defendant's trove of illegal weapons and fraudulent badge and other documents, defendant sought to intimidate P.S., a victim of his fraudulent investment scheme, by vandalizing his car and sending veiled threats to his father.  Defendant's recent history of deceptive, fraudulent, and violent conduct raise a significant concern regarding both flight and danger.  Thus, this factor weighs heavily in favor of detention.

**B. The Weight of the Evidence Supports Detention**

The evidence against defendant is irrefutable: agents found the firearms and false identification documents at his house, numerous witnesses heard him falsely identify himself as a law enforcement officer, and surveillance video shows him vandalizing P.S.'s car. While the Ninth Circuit has held that the weight of the government's evidence against an individual is the least important factor, the Court may consider whether the weight of the government's evidence increases the risk of non-appearance and/or the danger that defendant poses to the community.  Motamedi, 767 F.2d 1403, 1408 (9th Cir. 1985).

In this case, the evidence against defendant includes 19 seized firearms, high-capacity magazines, correspondence with government

5

agencies showing defendant was not allowed to possess firearms, a fake law enforcement badge, law-enforcement style vehicles, official use only manuals with department seals, victim-witness P.S., surveillance video showing defendant at P.S.'s residence, and body camera footage where defendant tells law enforcement that he is law enforcement.  The strength of the government's case further demonstrates the substantial risk that defendant will not appear for trial and confirms that, if released, he poses a grave danger to the community.

### C. Defendant's History and Characteristics Indicate that He is a Danger to the Community and a Flight Risk

Defendant's criminal history also shows the danger he poses if released on bond.  Defendant was a mental defective who was prohibited from possessing firearms, yet he still possessed 19 firearms, the vast majority of which were purchased by defendant's father using defendant's credit card.  Furthermore, he has at least two separate restraining orders against him for assault, demonstrating (along with his possession of firearms and his threats against P.S.) his propensity to commit acts of violence.

## V.     CONCLUSION

Because defendant poses a danger to the community and a risk of flight, the government respectfully submits that his application for reconsideration of pretrial release should be denied.