1            UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3         HONORABLE DOLLY M. GEE, U.S. DISTRICT JUDGE

4

5    UNITED STATES OF AMERICA,            )
                                          )
6                   Plaintiff,            ) CASE NO.
                                          ) 21-CR-00207-DMG
7          vs.                            )
                                          )
8    PATRICK MICHAEL O'REILLY,            )
                                          )
9                   Defendant.            )
     _____)

10

11

12

13

14            REPORTER'S TRANSCRIPT OF PROCEEDINGS

15               TUESDAY, APRIL 19, 2022

16                    3:41 P.M.

17              LOS ANGELES, CALIFORNIA

18

19

20

21

22    _____

23             MAREA WOOLRICH, CSR 12698, CCRR
            FEDERAL OFFICIAL COURT REPORTER
            350 WEST FIRST STREET, SUITE 4311
24          LOS ANGELES, CALIFORNIA 90012
                mareawoolrich@aol.com

25

1                      **APPEARANCES OF COUNSEL:**

2

3    **FOR PLAINTIFF:**

4        OFFICE OF THE UNITED STATES ATTORNEY
         By:  James Santiago
5        Assistant United States Attorney
         312 North Spring Street
6        Los Angeles, CA 90012

7

8    **FOR DEFENDANT:**

9        OFFICE OF THE FEDERAL PUBLIC DEFENDER
         By:  Lisa LaBarre
10       Deputy Federal Public Defender
         321 East Second Street
11       Los Angeles, CA 90012

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

```
 1              LOS ANGELES, CALIFORNIA; TUESDAY, APRIL 19, 2022

 2                            3:41 P.M.

 3                              -oOo-

 4

 5              THE COURTROOM DEPUTY:  Calling Item 4,

 6   CR 21-207-DMG, United States of America versus Patrick Michael

 7   O'Reilly.

 8              For the government we have?

 9              MR. SANTIAGO:  Good afternoon, Your Honor.

10   James Santiago appearing on behalf of the United States.

11              THE COURTROOM DEPUTY:  And on behalf of the defense?

12              MS. LABARRE:  Good afternoon, Your Honor.

13   Lisa LaBarre appearing on behalf of Patrick Michael O'Reilly

14   who is being assisted by an American sign language interpreter.

15              THE COURT:  Good afternoon, everyone.

16              This is the time set for sentencing.  Is there any

17   reason why judgment and sentence should not be imposed at this

18   time?

19              MS. LABARRE:  No, Your Honor.

20              MR. SANTIAGO:  No, Your Honor.

21              THE COURT:  All right.  I've read and considered the

22   Probation Office's presentence investigation report and the

23   disclosed recommendation letter filed on April 7, 2022, as well

24   as the addendum filed on April 14th.

25              I've also read and considered the government's
```

1    sentencing position and defendant's sentencing memorandum filed

2    under seal on April 13th.

3              Are there any other documents that the Court should

4    have considered?

5              MS. LABARRE:  No, Your Honor.

6              MR. SANTIAGO:  No, Your Honor.

7              THE COURT:  Mr. O'Reilly, have you had a chance to

8    review the presentence report with your attorney?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  And she explained it to you?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  Do you understand the report?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  Do you need any more time to confer with

15   your attorney?

16             THE DEFENDANT:  No, I don't think so, Your Honor.

17             THE COURT:  All right.  Ms. LaBarre, is there

18   anything in the presentence report that you wish to contest or

19   change that wasn't raised in your papers?

20             MS. LABARRE:  No, Your Honor.

21             THE COURT:  Mr. Santiago, is there anything that

22   you'd like to raise?

23             MR. SANTIAGO:  Not regarding the PSR, Your Honor,

24   but I do have some responses to the defendant's sentencing

25   position.

1          THE COURT:  All right.

2          Ms. LaBarre, would you like to be heard at this

3    time?

4          MS. LABARRE:  Yes, Your Honor.  Thank you.

5          Your Honor, Mr. O'Reilly has been in custody for

6    exactly one year as of today.  He was arrested April 19th,

7    2021.  Your Honor, we submit that that is punishment enough for

8    this offense.

9          The Probation Office has identified several factors

10   that warrant a sentence outside of the guidelines range.

11         Mr. O'Reilly is now stable.  He has an appropriate

12   medication regimen, and he has immediate placement at Tessie

13   Cleveland Community Services.

14         I've been speaking via email with Brianna Valdez, a

15   behavioral therapist there.  They can accept him immediately.

16   They would prefer if Your Honor was inclined to sentence him to

17   time served, that he be released the following day given the

18   late hour.  But they can receive him immediately, and they can

19   arrange for transportation from MDC, provide him with

20   therapist, provide him with mental health treatment until he

21   can get back on his feet, reestablish his Kaiser insurance and

22   pay for a private therapist.

23         I think we can all agree that Mr. O'Reilly is in

24   need of this treatment, but he will not be released to the

25   streets.  He also has the strong support of his family, Natalia

1  and their child, and even his ex-wife Yulia Reilly.

2          Mr. O'Reilly badly handled the inheritance of his

3  father's guns.  He knows he could have done better.  He admits

4  as such in his letter to the Court.  And he also tried to

5  appeal his prohibited person status by submitting himself to a

6  mental health evaluation.

7          He also mishandled his private security company by

8  not properly delineating his role as a private not a government

9  security contractor.

10          But, again, I would emphasize that Mr. O'Reilly has

11  been in treatment.  He's not going to be released to the

12  streets.  He's going to be continuing in treatment, the

13  treatment that has thankfully placed him into remission and

14  hopefully will give him a second chance at life.

15          He had a pretty good life before the development of

16  his illness, and he hopes to go back to that life.

17          Thank you, Your Honor.

18          THE COURT:  Thank you.

19          Mr. Santiago?

20          MR. SANTIAGO:  Thank you, Your Honor.  This will

21  just be brief.

22          The government stands behind its sentencing position

23  along with a low-end recommendation in this case.  But I did

24  want to address specifically the firearms and issue of

25  inheritance.  Apparently from defense sentencing position, he

1    inherited them in March of 2018 and subsequently appealed that

2    decision to the State of Illinois.

3             I would just like to make clear that in the

4    Complaint itself, specifically paragraph 31, it details how

5    Mr. O'Reilly starting in February of 2016 was attempting to buy

6    firearms.  So I just wanted to make sure that was clear.

7             And regarding this inheritance of these heirlooms,

8    the other thing I would like to make sure is clear on the

9    record is that one of these supposed heirlooms was actually

10   purchased in May of 2018, approximately two months after his

11   father had passed away.

12            With that, I don't have anything else to add,

13   Your Honor.

14            THE COURT:  Mr. Santiago, the probation officer's

15   disclosed recommendation letter recommends that I include some

16   language regarding the property identified in the preliminary

17   order of forfeiture that is subject to forfeiture, but there is

18   no preliminary order of forfeiture because you didn't provide

19   one.

20            MR. SANTIAGO:  That is correct, Your Honor.

21            THE COURT:  Is that necessary, or has it already

22   been administratively forfeited?

23            MR. SANTIAGO:  It has been already administratively

24   forfeited, Your Honor.  But within the plea agreement, the

25   defendant has agreed to the abandonment of certain other

 1   materials, specifically tactical gear.  I don't have the exact

 2   paragraph in front of me, but to answer your question, there is

 3   no forfeiture in this case.

 4           THE COURT:  All right.  So I don't need to include

 5   this language that was included in the disclosed recommendation

 6   letter?

 7           MR. SANTIAGO:  Correct, Your Honor.

 8           THE COURT:  All right.  Thank you.

 9           All right.  Mr. O'Reilly, would you like to make a

10   statement before I impose sentence?

11           THE DEFENDANT:  Yes, Your Honor, just briefly.  I

12   feel horrible for this whole situation.  I was not in my clear

13   mind.  I was not medicated at the time.  And having this year,

14   being in the hospital, being in the nursing home where they put

15   me, it's had me see things completely different.

16           And I just feel egregiously sorry for everything

17   that happened.  It shouldn't happened.  I don't imagine this

18   will ever happen again in my life.  This is a wake-up -- you

19   know, a one time only wake-up call for me.  I can't imagine

20   that I would ever do this again.  Being away from my

21   children -- I have two five-year-olds.  For my youngest, it has

22   been devastatingly hard on me.  And so as soon as I can get

23   back to them, I'm hoping to.

24           That's really all I have to say, Your Honor.  Thank

25   you for listening to me.

1          THE COURT:  All right.  Thank you.

2          All right.  I'm going to calculate the guidelines

3    range.  In this case, I find that the probation officer's

4    calculation of the guidelines is correct.  Specifically,

5    there's a base offense level of 6 under Guideline Section

6    2B1.1(a)(2) for Count 3, possessing and furnishing fraudulent

7    seals of departments or agencies of the United States.

8          There's a base offense level of 20 under Guideline

9    Section 2K2.1(a)(4)(B)(ii)(I) for Count 5, a firearm by a

10   prohibited person.

11         There's a four-level increase under Section

12   2K2.1(b)(1) because Mr. O'Reilly possessed 19 firearms.

13         After performing the multiple-count adjustment under

14   Section 3D1.4(a), the combined adjusted offense level is 24.

15         There's a three-level reduction under Section

16   3E1.1(a) and (b) for defendant's acceptance of responsibility.

17         This results in a total offense level of 21.

18         According to the presentence report, there are no

19   criminal history points.  So the Criminal History Category is

20   I.

21         I find that the presentence report is accurate and

22   correct, and I therefore adopt the report and its calculation

23   of the advisory sentencing guidelines.

24         In determining the appropriate sentence, as you

25   know, the guidelines are the starting point and the initial

     1     benchmark in the Court's analysis.

     2             Given the counts to which Mr. O'Reilly pled guilty,

     3     I'm taking into account the November 2021 edition of the

     4     guidelines.

     5             The total offense level, as I said, is 21.  The

     6     Criminal History Category is I.  The guidelines range for

     7     custody is 37 to 46 months.  The guidelines range for

     8     supervised release is one to three years.  The guideline range

     9     for the fine is $15,000 to $150,000.

    10             In determining the sentence, I am mindful of and

    11     take very seriously my obligation to act in accordance with the

    12     sentencing guidelines admonition that the Court shall impose a

    13     sentence that is sufficient but not greater than necessary to

    14     comply with the purposes of the guidelines.

    15             In making an individualized determination based on

    16     the facts, I am considering the factors described in Section

    17     3553(a), especially but not exclusively, one, the nature and

    18     circumstances of the offense and the history and

    19     characteristics of this defendant.

    20             Two, the need for the sentence to reflect the

    21     seriousness of the offense, to promote respect for the law and

    22     provide just punishment, to avoid adequate deterrence for

    23     criminal conduct and protect the public from further crimes of

    24     the defendant.

    25             I also considered the need to avoid unwarranted

sentence disparities among defendants with similar records who have been convicted of similar offenses.

In weighing all of these factors under Section 3553(a), I've taken into account the facts set forth in the plea agreement, the parties' position statements and their statements here today in court including the following:

Patrick Michael O'Reilly, age 46, stands convicted of the crimes of possessing and furnishing fraudulent seals of departments and agencies of the United States and possession of a firearm by a prohibited person.

Between 2017 and 2021, Mr. O'Reilly fraudulently represented himself as a federal law enforcement officer.  He obtained and displayed a counterfeit badge and seals of the Department of Homeland Security, drove a vehicle equipped with police lights and a siren and attempted to pass himself off to law enforcement and security guards as a federal law enforcement officer.

Defendant also obtained 19 firearms, seven high-capacity magazines, batons, and tactical gear.

Mr. O'Reilly was legally prohibited from possessing any of these firearms because of his previously adjudicated status.

He has a challenging personal history due in part to the fact that his mother was only 17 when she gave birth to him and was a heroin addict who had little contact with him.

 1          His mother had some notoriety because of her own

 2   poor choices in life and became the subject of a book and

 3   documentary.  Mr. O'Reilly in turn experienced bullying because

 4   of the notoriety that his mother received.

 5          Because Mr. O'Reilly contracted spinal meningitis

 6   shortly after he was born, he was hospitalized for a year, and

 7   this led to his developing deafness in his right ear and

 8   partial deafness in his left ear.

 9          He was raised mostly by his paternal grandparents.

10   He completed high school and has completed numerous computer

11   science certifications.

12          To his credit, it appears that he was gainfully

13   employed for a good part of his life usually in

14   computer-related endeavors until his most recent misstep, I

15   would say.

16          Mr. O'Reilly has a serious mental health condition

17   which has been detailed in the presentence report and in

18   Dr. Faerstein's report and has had various problems throughout

19   his life because of it.  Fortunately, he has responded to

20   medication and recently appears to be in remission.

21          Although he is not currently married, he has four

22   children from four prior relationships.  He apparently has no

23   assets and therefore is not able to pay any fine.

24          Mr. O'Reilly accepted responsibility relatively

25   quickly after having become in remission in the taking of his

1   medications, and he entered a plea thereby saving the

2   government the trouble and expense by going to trial.

3          Mr. O'Reilly, you have committed a serious crime

4   that involved a serious breach of trust.  I take into account,

5   however, the fact that you were dealt some difficult cards from

6   the time you were born and you have had to contend with serious

7   mental health issues that sometimes appear to have gotten the

8   better of you and probably had something to do with current

9   offense as well.

10          As for the firearms violation, the fact that the

11  firearms at least in part were inherited from your father will

12  be taken into account.  Though you could and should have

13  handled that situation in a way that would have protected you

14  from the current predicament.

15          I have therefore crafted a sentence that strives to

16  reflect the seriousness of your offense and provides just

17  punishment but is not more punitive than is necessary.

18          I will now state the sentence which will include a

19  downward variance, but counsel will have a chance to make any

20  legal objections before sentence is imposed.

21          Does counsel know of any reason why sentence should

22  not now be imposed?

23          MS. LABARRE:  No, Your Honor.

24          MR. SANTIAGO:  No, Your Honor.

25          THE COURT:  In light of the totality of the

circumstances, I find that the following sentence is reasonable

and sufficient and is no greater than necessary to comply with

the purposes stated in 18 U.S.C. Section 3553(a):

It is ordered that the defendant shall pay to the

United States a special assessment of $200 which is due

immediately.  Any unpaid balance shall be due during the period

of imprisonment at the rate of not less than $25 per quarter

and pursuant to the Bureau of Prisons Inmate Financial

Responsibility Program.

Pursuant to Guideline Section 5E1.2(a), all fines

are waived as the Court finds that the defendant has

established that he is unable to pay a fine and is not likely

to become able to pay a fine.

Pursuant to the Sentencing Reform Act of 1984, it is

the judgment of the Court that the Defendant Patrick Michael

O'Reilly is hereby committed on Counts 3 and 5 of the seven

count indictment to the custody of the Bureau of Prisons for a

term of 24 months.

This term consists of 24 months on each of Counts 3

and 5 to be served concurrently.

The Court will recommend that the Bureau of Prisons

provide the defendant with an ear and eye examination in order

to provide all necessary treatment.

Upon release from imprisonment, the defendant shall

be placed on supervised release for a total term of three

1   years.

2        This term consists of three years on each of

3   Counts 3 and 5 of the indictment, all such terms to run

4   concurrently under the following terms and conditions:

5        One, the defendant shall comply with the rules and

6   regulations of the United States Probation and Pretrial

7   Services Office and Second Amended General Order 20-04.

8        Two, the defendant shall not commit any violation of

9   federal, state or local law or ordinance.

10        Three, the defendant shall participate in mental

11   health treatment which may include evaluation and counseling

12   until discharged from the program by the treatment provider

13   with the approval of the probation officer.

14        Four, as directed by the probation officer, the

15   defendant shall pay all or part of the cost of the Court

16   ordered treatment to the aftercare contractors during the

17   period of community supervision.  The defendant shall provide

18   payment and proof of payment as directed by the probation

19   officer.  If the defendant has no ability to pay, no payment

20   shall be required.

21        Five, during the period of community supervision,

22   the defendant shall pay the special assessment and fine in

23   accordance with this judgment's -- I'm sorry.  Not fine.  The

24   special assessment in accordance with this judgment's orders

25   pertaining to such payment.

1          Six, the defendant shall submit the defendant's

2    person, property, house, residence, vehicle, papers or other

3    areas under the defendant's control to a search conducted by a

4    United States probation officer or law enforcement officer.

5    Failure to submit to a search may be grounds for revocation.

6          The defendant shall warn any other occupants that

7    the premises may be subject to searches pursuant to this

8    condition.  Any search pursuant to this condition will be

9    conducted at a reasonable time and in a reasonable manner upon

10   reasonable suspicion that the defendant has violated a

11   condition of his supervision and that the areas to be searched

12   contain evidence of this violation.

13         Seven, the defendant shall refrain from any contact

14   with P.S. directly or indirectly, including contact in person

15   or any form of communication including third-party contact,

16   mail, telephone, email and social media.

17         Eight, the defendant shall not engage as whole or

18   partial owner, employee, consultant, employee or otherwise in

19   in any business that purports to have experience or expertise

20   in law enforcement, military or security without the express

21   approval of the probation officer prior to engaging in such

22   employment.

23         Further, the defendant shall provide the probation

24   officer with access to any and all business records, client

25   lists and other records pertaining to the operation of any

business owned in whole or in part by the defendant as directed
by the probation officer.

Nine, the defendant shall not be employed in any
position that requires licensing or certification by any local,
state or federal agency without the prior written approval of
the probation officer.

Ten, the defendant shall not be self-employed nor be
employed in a position that does not provide regular pay stubs
with the appropriate deductions for taxes unless approved by
the probation officer.

The drug testing condition mandated by statute is
suspended based on the Court's determination that the defendant
poses a low risk of future substance abuse.

The Court authorizes the probation officer to
disclose the presentence report and any previous mental health
evaluations or reports to the treatment provider.  The
treatment provider may provide information excluding the
presentence report to state or local social service agencies
such as the State of California Department of Social Services
for the purpose of the client's rehabilitation.

Ms. LaBarre, do you wish me to recommend that
Mr. O'Reilly be designated to a facility in Southern California
or elsewhere?

MS. LABARRE:  Yes.  Actually the facility we are
interested in, Terminal Island.

1          THE COURT:  All right.  I will make that

2    recommendation although, as you know, it's purely a

3    recommendation.

4          MS. LABARRE:  I understand.

5          THE COURT:  Mr. Santiago, do you wish to remove to

6    dismiss the remaining counts of the indictment?

7          MR. SANTIAGO:  Yes, Your Honor.

8          THE COURT:  All right.  That motion is is granted in

9    the interest of justice.

10         The statement of reasons will be included in the

11   commitment order and judgment and will be provided to the

12   Probation Office, the Bureau of Prisons and to the United

13   States Sentencing Commission.

14         A complete copy of the presentence report will also

15   be provided to the Bureau of Prisons and to the United States

16   Sentencing Commission.

17         Any other copies of the report and related materials

18   will remain confidential.

19         Mr. O'Reilly, I need to inform you that generally a

20   defendant has a right to appeal his conviction if he believes

21   that his guilty plea was somehow unlawful or involuntary or if

22   he thinks that there was some other fundamental defect in the

23   proceedings or if he thinks his sentence is contrary to the

24   law.

25         In your case, however, you entered into a plea

1    agreement in which you gave up your right to appeal all or part

2    of the sentence.

3              But if you have some theory that you wish to raise

4    with the Ninth Circuit Court of Appeals, with few exceptions

5    you must file a notice of appeal within 14 days of judgment

6    being entered.  Do you understand?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  All right.  Does either counsel have

9    anything further?

10             MR. SANTIAGO:  Nothing from the government,

11   Your Honor.

12             MS. LABARRE:  No, Your Honor.  Thank you.

13             THE COURT:  We are adjourned.

14             (At 4:02 p.m. the proceedings adjourned.)

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

**CERTIFICATE OF OFFICIAL REPORTER**

I, MAREA WOOLRICH, FEDERAL OFFICIAL REALTIME COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATION OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

DATED THIS __20TH__ DAY OF __JULY, 2022.__

/S/ MAREA WOOLRICH
_____
MAREA WOOLRICH, CSR NO. 12698, CCRR
FEDERAL OFFICIAL COURT REPORTER